IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARK FORBES,<br><br>      Plaintiff,<br>vs.<br><br>WAL-MART STORES, INC., dba<br>SAM'S CLUB, and JOHN DOES 1-10<br><br>      Defendants. | **MEMORANDUM DECISION AND<br>ORDER GRANTING<br>SUMMARY JUDGMENT<br>IN FAVOR OF DEFENDANT**<br><br>Case No. 2:08-CV-008 DN<br><br>Magistrate Judge David Nuffer |

Defendant Wal-Mart Stores' (Wal-Mart) Motion for Summary Judgment[1] against

Plaintiff John Forbes's claim for negligence is before this Court. For the reasons set forth below,

Defendant's motion is GRANTED.

The Court has carefully examined the facts asserted by the parties, largely drawn from

the depositions of Mark Forbes,[2] Joseph Montoya[3] and Sheli Craven[4] and here summarizes both

the undisputed facts and the allegedly disputed facts. As will be later discussed, some of these

alleged facts are actually unsupported legal conclusions while other alleged facts are not material

to this motion.

---

[1] Defendant Wal-Mart Stores' Motion for Summary Judgment, docket no. 36, filed October 30, 2009.

[2] Deposition of Mark Forbes (Forbes Dep.), attached as Exhibit A to Defendant Wal-Mart Stores' Memorandum in Support of Motion for Summary Judgment (Supp. Mem.), docket no. 37, filed October 30, 2009; attached as Exhibit B to Defendant Wal-Mart Stores' Memorandum in Reply to Plaintiff's Amended Memorandum in Opposition to Summary Judgment (Reply Mem.), docket no. 40, filed December 15, 2009; attached as Exhibit A to Amended Plaintiff's Memorandum of Points and Authorities in Opposition to Summary Judgment (Opposition Mem.), docket no. 39, filed November 30, 2009.

[3] Deposition of Joseph A. Montoya (Montoya Dep.), attached as Exhibit C to Supp. Mem.; attached as Exhibit A to Reply Mem.; attached as Exhibit B to Opposition Mem.

[4] Deposition of Sheli Craven (Craven Dep.), attached as Exhibit C to Reply Mem; attached as Exhibit C to Opposition Mem.

## UNDISPUTED FACTS

Defendant Wal-Mart asserted the following facts in its opening memorandum.[5] Plaintiff Forbes has admitted each of these facts.[6]

1.    This case arose as the result of a slip and fall accident that occurred on the loading dock at the Sam's Club Store in West Jordan, Utah.[7]

2.    The accident occurred on Friday, January 16, 2004, at approximately 4:00 p.m.[8]

3.    The Plaintiff, Mark Forbes, an employee of Wasatch Overhead Door Company, had been called to Sam's Club to repair a dock plate on the loading dock.[9] Plaintiff is 46 years old and worked for Wasatch Door as its lead installer.[10] In this position, Mr. Forbes installs commercial doors and dock plates and also services these products.[11]

4.    According to Plaintiff, the weather on the day of the incident was cold and foggy.[12] Plaintiff does not remember any rain or snow on the day of the occurrence.[13]

5.    When Plaintiff arrived at the job site, he could see that there were frost or snow-like patches on part of the loading ramp.[14] These patches stopped about ten feet from the back of the loading dock.[15] Mr. Forbes backed up his truck to approximately where the frost patches

---

[5] Supp. Mem. at 1-5.

[6] Opposition Mem. at 1-2.

[7] Complaint ¶¶ 5, 9.

[8] *Id.* ¶¶ 5-8; Forbes Dep. at 44, 50.

[9] Forbes Dep. at 47-50, 56-57.

[10] *Id.* at 15, 17.

[11] *Id.* at 17-20.

[12] *Id.* at 45.

[13] *Id.*

[14] *Id.* at 47, 54-55.

[15] *Id.* at 51, 54-56.

stopped.[16]  The remaining area of ramp between the back of his truck and the end of the loading

dock was bare concrete that looked wet, but it was not icy based on what Plaintiff could see and

his walking around in that area.[17]

6.      Plaintiff's specific job was to do some welding on the dock plate that bridges the

gap between the warehouse landing and the back of a semi-tractor trailer.[18]  Mr. Forbes

performed this welding from inside the building.[19]

7.      To get from the loading dock to his truck on the loading ramp, Mr. Forbes set up a

small ladder near the back of the loading dock on the left side.[20]  He then was able to get to and

from the back of his truck to the platform where he worked on the dock plate.[21]

8.      After finishing the work on the loading dock, Plaintiff asked Joseph Montoya,

Sam's Club Receiving Manager, to help him lift and release the dock plate.[22]  Just before making

this request, Plaintiff climbed down the ladder and walked back to the driver's side of his vehicle

to put tools away., and then he walked to the right side of the platform, when his left foot hit a

patch of ice and he fell to the ground.[23]  Plaintiff referred to the ice patch as black ice that he

couldn't see before the incident.[24]  Unfortunately, the fall caused a spiral fracture of Plaintiff's

left femur.[25]

---

[16] *Id.* at 51.

[17] *Id.* at 54-55, 65-66.

[18] *Id.* at 47-48; *see also* photographs of loading ramp & dock, attached as Exhibits 1-7 to Plaintiff's deposition, attached to Supp. Mem. as Exhibit "B."  In addition, Plaintiff's explanation of these photographs is found on pages 49-52, 58-60 and 66 of his deposition transcript.

[19] Forbes Dep. at 50-53.

[20] *Id.* at 52.

[21] *Id.*

[22] *Id.* at 49; Montoya Dep. at 38-40.

[23] Forbes Dep. at 58-63; Montoya Dep. at 38-40.

[24] Forbes Dep. at 61-63.

[25] *Id.* at 72.

9.      Plaintiff was then assisted by Mr. Montoya and another Sam's Club employee.[26]

10.     Plaintiff testified as follows with respect to the ice patch that caused his fall:

> Q.     Do you know when the ice formed there?
> A.     Well, it must have been while I was inside the building.
> Q.     Why do you say that?
> A.     It was a typical January day, it was getting cold and the sun was going down.
> Q.     Why do you say it must have formed while you were in the building?
> A.     Well, it didn't seem that slick to me, the concrete, it was wet, but it wasn't icy.
> Q.     And that's based on your experience while you were working that day, observing and walking around in that area?
> A.     Uh-huh (affirmative).
> Q.     Yes?
> A.     Yes.[27]

11.     Plaintiff testified that he did not know when the ice formed that caused his fall:

> Q.     Referring back to my question about formation of the ice, you don't know if that ice had formed within a few minutes of when you fell, do you?
> A.     I don't.
> Q.     Or if it had formed 20 minutes before you fell?
> A.     I don't.[28]

12.     As receiving manager, Mr. Montoya was responsible for overseeing the daily in-coming and out-going freight.[29]

13.     While Plaintiff was performing his work, he never complained to Mr. Montoya that there were slick or icy conditions on the ramp.[30]

14.     Prior to the accident, Mr. Montoya did not see and was not told about the ice patch that caused Plaintiff to fall, and he did not know when the ice patch formed.[31]

---

[26] *Id.* at 66-67. Montoya Dep. at 42-44.

[27] Forbes Dep. at 65. Plaintiff testified that his feet had not slid on the portion of wet concrete in back of his vehicle before the occurrence. *Id.* at 62-63.

[28] *Id.* at 65-66.

[29] Montoya Dep. at 8.

[30] *ld.* at 55; Forbes dep. at 49, 69

## Additional Undisputed Fact

In addition to the undisputed facts above, Forbes has stated: "Defendant was responsible for snow and ice removal in the Dock where the accident occurred."[32] Wal-Mart essentially admits this additional fact by stating that it "would summon a snow removal company when there was sufficient snow or ice to warrant removal."[33]

## ALLEGEDLY DISPUTED FACTS

To avoid summary judgment, Forbes asserts five "additional probative facts" to argue that genuine issues of material fact prevent summary judgment against him.[34] The first of these was discussed immediately above – and is not disputed by Walmart. The other four are disputed. The following sections discuss Plaintiff's additional factual allegations and the actual support for each. Underneath each factual allegation, all the supporting information that Plaintiff included in his memorandum is quoted, followed by discussion of facts which are actually evidenced. A later section of this order discusses the legal implications related to the allegations which actually have factual support.

### I. Forbes's First Additional Factual Allegation

Forbes stated: "Defendant knew or should have known of the hazardous condition before the slip and fall occurred."[35] However, the evidence Forbes submitted in support of this allegation is insufficient. Plaintiff's memorandum cites these excerpts from Mr. Montoya's deposition.

---

[31] Montoya Dep. at 55-56.

[32] Opposition Mem. at 2.

[33] Reply Mem. at 6.

[34] Opposition Mem. at 2-7.

[35] *Id.* at 2.

Q: Do you recall what the weather was like on the day that Mark Forbes came to do the repair on Dock No. 5?

A: I recall it being cold. And I believe it to be dry in the air as far as the weather was concerned.

Q: Do you recall when in relationship to this incident it had last snowed, for example?

A: No, I don't.

Q: What do you remember about the condition of Docks 1, 2, 3, 4, and 5?

A: To see the ground, I don't recall being able to see the ground so there may have been a flurry or something to where it was lightly covering the ground. . . .

Q: If Mr. Forbes were to testify that all the docks except for Dock No. 5 were dry and clear, is that contrary to your recollection?

. . . .

A: I would say they were not.

. . . .

Q: So my question, to be more specific, do you recall specifically whether or not Docks 1 through 4 either were dry and clear or did they have some snow or - -

A: I would say they had some snow on the ground.

Q: Okay. And that's with regard to all the docks in this area; is that right?

A: Dock 5, where the trailer was at, underneath the trailer would have been less, if any. . . .

Q: [I]s it possible that there was just simply snow underneath the trailer that wasn't under the - - wasn't in the other dock bays?

. . . .

A: There may have - - yes, it may have.[36]

Mr. Montoya merely testified that the day of the incident was cold; that the air was dry; and that there were some patches of snow on the bays of Loading Docks 1 through 4, and less snow on Dock 5 where the incident took place. This evidence does not support Plaintiff's allegation that "[d]efendant knew or should have known of the hazardous condition before the slip and fall occurred."

As to whether Wal-Mart had any *actual knowledge* of the hazardous condition, Plaintiff puts forward absolutely no supporting evidence at all. Without any supporting facts, this assertion is nothing more a bare legal conclusion.

---

[36] Montoya Dep. at 27-29.

As to whether Wal-Mart *should have known* that a hazardous condition existed prior to the slip and fall, the testimony that Plaintiff cites, shown above, does not support the allegation. Plaintiff seeks to use the *mere possibility* of some snow in the Dock 5 area as the predicate for Wal-Mart's constructive knowledge of black ice where the accident occurred. Plaintiff's allegation rests on the speculative assumption that the presence any amount of snow, even a flurry, would be sufficient to give Defendant constructive notice of an icy condition.

## II. Forbes's Second Additional Factual Allegation

Forbes stated: "Despite the fact that Defendant knew of the hazardous condition on the ground, and that work was being performed in the area, they [sic] failed to salt or otherwise correct the condition."[37] This allegation begins with a premise that is not supported, making the remainder of the allegation immaterial. Plaintiff's memorandum supports this allegation with excerpts from Mr. Montoya's deposition.

> Q:  Do you recall whether or not on the day of this incident anybody from your place or you personally had salted any of these dock bays?
> A:  No.
> Q:  Do you recall whether or not there was any snow removal on that day?
> A:  No.
> . . . .
> Q:  Whose job was it to determine whether or not there was enough snow to merit removal?
> A:  Either myself or an opening manager of the day.[38]

Mr. Montoya testified that he did not recall anyone removing snow, or salting the ground on the day of the accident. He also acknowledged that he had the power to determine whether there was enough snow to merit removal. This evidence does not support Plaintiff's allegation that "[d]efendant knew of the hazardous condition on the ground." Without actual or imputed notice, it is irrelevant that Defendant "failed to salt or otherwise correct the condition."

---

[37] Opposition Mem. at 5.

[38] Montoya Dep. at 32-33.

The allegation of a *failure to act* is immaterial without the requisite notice to give rise to a duty. Actual or imputed notice of a hazard is a prerequisite to a duty to correct a hazard. Plaintiff presented no evidence that Defendant *knew* or *should have known* about the hazard, so a failure to "salt or otherwise correct" is not material.

### III. Forbes's Third Additional Factual Allegation

Forbes stated: "Defendant's manager, Joseph Montoya, was responsible to observe the Plaintiff Mark Forbes and his work area."[39] Plaintiff's memorandum relies on this excerpt from Mr. Montoya's deposition.

> Q:    And as I understand it, one of your jobs when an outside employee comes in to work on an area such as the dock plate was to actually be there during the time of service. Is that your responsibility?
> A:    The time of service, uhm, yes. . . . [I]n the way of security with the door being open and unlocked, someone would need to be in the area while the door was open.
> Q:    Could it have been anybody or was it important that it was a manager at that point?
> A:    It was a manager.[40]

Mr. Montoya testified that it was important for him, or another manager, to be present in the general area, for security purposes, when an outside employee comes to work on the property. This duty is one of security for Wal-Mart, but it does not support any implication that Mr. Montoya guaranteed Plaintiff's safety or breached a duty owed to Forbes.

Wal-Mart admits that Montoya "was responsible for remaining in the general area where Plaintiff was working to make sure that nothing entered or exited the store improperly."[41] There is insufficient evidence to imply more than this admission. For example, there is insufficient evidence to imply that Montoya was responsible for watching over and protecting the Plaintiff.

---

[39] Opposition Mem. at 6.

[40] Montoya Dep. at 31.

[41] Reply Mem. at 7.

## IV. Forbes's Fourth Additional Factual Allegation

Forbes stated: "The area Plaintiff Mark Forbes fell was covered in ice."[42]  However, the evidence Forbes cites does not support Plaintiff's use of the word "covered."  Plaintiff's memorandum cites these excerpts from Sheli Craven's deposition.

> Q:  So you walked to open the door and what did you see?
> A:  A man down on the ground, laying [sic] down and partially under a truck. I believe.
> Q:  Do you recall if the area on which he was laying [sic] had any snow or ice on it?
> A:  There was definitely ice.
> . . . .
> Q:  Can you describe how big a patch this was or where it extended from, just to the best of your memory?
> A:  Well, I don't recall how much ice was there. I do recall sliding myself. I was - - I was up farther from the gentleman that was hurt, and I was going towards him and I was sliding and kind of slid right into him.[43]

Ms. Craven merely testified that Mr. Forbes was lying on a patch of ice.  Her testimony does not describe the exact or even approximate size of the ice patch.  Craven's testimony does not support Plaintiff's generous characterization of the size of the ice patch.

Plaintiff describes the area as being "covered in ice," but that characterization is not supported by the cited evidence.  It is undisputed that Forbes slipped on a patch of ice, but it is quite different to assert that the ground was "covered."  The word "covered" implies a large ice patch, which would strengthen Plaintiff's assertion that Defendant had reason to know of the hazard.  However, the Plaintiff gives no evidence to support  his factual allegation that the ground was "covered in ice."

---

[42] Opposition Mem. at 6.

[43] Craven Dep. at 11, 14.

### Summary of Forbes's Additional Factual Allegations

The four facts alleged by Forbes as disputed, material and preventing entry of summary judgment are not viable support for Forbes. The first, that Wal-Mart "knew or should have known of the hazardous condition" is not supported by facts; the second, that Wal-Mart "failed to salt" is irrelevant without the necessary factual predicate of notice; the third, that Wal-Mart's manager Montoya was "responsible to observe" is unsupported as to a duty to observe Forbes and is not material as to a duty to provide store security; and the fourth, that the area "was covered in ice" is not supported by the evidence.

### DISCUSSION

### I. Summary Judgment Standard

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"[44] Upon proper motion, summary judgment will be granted unless the non-moving party, by affidavits or otherwise, "set[s] out specific facts showing a genuine issue for trial."[45]

Summary judgment "should be invoked with caution to the end that litigants may be afforded a trial where there exists between them a bona fide dispute of material facts."[46] In fact, summary judgment relief is "drastic and should be applied with caution."[47]

---

[44] *Gwinn v. Awmiller*, 354 F.3d 1211, 1215 (10th Cir. 2004) (quoting Fed. R. Civ. P. 56(c)).

[45] Fed. R. Civ. P. 56(e)(2).

[46] *Zampos v. U.S. Smelting, Refining & Min. Co.*, 206 F.2d 171, 173 (10th Cir. 1953).

[47] *Jones v. Nelson*, 484 F.2d 1165, 1168 (10th Cir. 1973) (setting aside summary judgment in a negligence case).

Even so, there must be a dispute over specific materials *facts*, not vague, unsubstantiated allegations.  "Unsupported conclusory allegations . . . do not create an issue of fact."[48]  In order to "withstand summary judgment, the 'nonmoving party must come forward with *specific facts* showing that there is a *genuine issue for trial*.'"[49]  In the end, "if . . . there is no genuine issue as to any material fact . . .  [then] the case is appropriate for disposition by summary judgment and the court should enter such judgment."[50]

## II. Slip and Fall Liability

In Utah, slip and fall cases fall into two categories:  those involving an unsafe condition that is temporary; and those involving an unsafe condition that is permanent.[51]  "The first [class] involves some unsafe condition of a *temporary* nature, such as a slippery substance on the floor and usually where it is not known how it got there."[52]  The ice patch that is the subject of this case is an unsafe condition of a temporary nature:  a slippery substance on the ground that is not permanent.  No party alleges that the hazard in this case was a permanent condition.

There are two prerequisites for Forbes to show liability in this temporary condition case:

> To recover under a temporary unsafe condition theory, a plaintiff must show that (1) the defendant 'had knowledge of the condition, that is, either actual knowledge or constructive knowledge because the condition had existed long enough that he should have discovered it;' and (2) 'after [obtaining] such knowledge, sufficient time elapsed that in the exercise of reasonable care he should have remedied it.'[53]

---

[48] *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007) (citing *MacKenzie v. Denver,* 414 F.3d 1266, 1273 (10th Cir. 2005)).

[49] *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1234 (10th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)) (internal quotation marks omitted) (first emphasis added).

[50] *Zampos,* 206 F.2d at 173.

[51] *Schnuphase v. Storehouse Mkts.*, 918 P.2d 476, 478 (Utah 1996).

[52] *Id.* (quoting *Allen v. Federated Dairy Farms, Inc.,* 538 P.2d 175, 176 (Utah 1975)) (alteration in original).

[53] *Jex v. JRA, Inc.*, 196 P.3d 576, 580 (Utah 2008) (quoting *Allen v. Federated Dairy Farms,* 538 P.2d 175, 176 (Utah 1975)) (alteration in original).

In order to survive Defendant's motion for summary judgment, Plaintiff Forbes must raise a genuine issue of fact material to the first of these two elements: (1) notice of hazard, and then to the second: (2) sufficient time after notice to remedy the hazard.

## 1. Notice of Hazard

First, Forbes must create a genuine issue of material fact that Wal-Mart knew or should have known about the patch of black ice that apparently caused his injury. However, Plaintiff fails to create a genuine issue of material fact regarding Defendant's required notice.

As to whether Wal-Mart had any *actual knowledge* of the hazardous condition, Plaintiff puts forward no supporting evidence at all. Plaintiff attempts to assume this critical element in various allegations as if it were plainly obvious. Without any supporting facts, this assertion is nothing more than a bare legal conclusion; and unsupported, conclusory allegations do not create a genuine issue of material fact.

As to whether Wal-Mart *should have known* that a hazardous condition existed prior to the slip and fall, the evidence that Forbes cites does not adequately support this allegation. In his opposition memorandum, Forbes states:

> In this case, there is a genuine dispute of material fact whether Defendant should have known of the icy condition that Plaintiff fell on. This dispute is built upon several subsidiary facts: 1) Defendant's employees knew that it was cold; 2) Defendant's employees knew that snow was falling and covering the docks . . . .[54]

Some of these subsidiary facts clearly derive from Mr. Montoya's testimony. Mr. Montoya testified that the day of the incident was cold, that the air was dry, and that there were some patches of snow on the bays of Loading Docks 1 through 4, with less snow (or possibly no snow at all) on Dock 5 where the incident took place.[55] He also testified

---

[54] Opposition Mem. at 8.

[55] Montoya Dep. at 27-29.

"there may have been a flurry or something to where it was lightly covering the ground."[56]  Reviewing these facts in the light most favorable to the Plaintiff, we will take as true that (1) Mr. Montoya knew it was cold, (2) light snow was falling, and (3) there were at least some patches of snow on Dock 5.

However, Plaintiff has not presented sufficient evidence to support his assertion that snow was "covering the docks."  "Covering" would imply the presence of much more snow than Mr. Montoya's testimony supports — he describes the presence of "some snow"[57] in Docks 1 through 4, and "less, if any"[58] in the Dock 5 area, where Forbes fell.  Additionally, it is undisputed that the "area of ramp between the back of [Forbes's] truck and the end of the loading dock was *bare concrete* that looked *wet*."[59]  The undisputed language "bare" and "wet" does not reasonably suggest that the snow was "covering the docks;" in fact, it supports the opposite conclusion—that there wasn't much snow at all.  Also, in another part of his memorandum, Plaintiff describes the place of the accident as being "covered in ice."[60]  Using "covered" here would imply that it was a large ice patch, strengthening Plaintiff's claim that Defendant should have noticed the hazard.  However, both of these assertions are "[u]nsupported conclusory allegations" and thus do not create an issue of fact.[61]

Even if it is true that (1) Mr. Montoya knew it was cold, (2) light snow was falling, and (3) there were at least some patches of snow on Dock 5, these facts together do not create a basis to find that Wal-Mart should have known of the hazard.  Plaintiff seeks to connect the fact that

---

[56] *Id.* at 27.

[57] *Id.* at 28.

[58] *Id.*

[59] *See supra* note 18 and accompanying text (emphasis added).

[60] Opposition Mem. at 6.

[61] *Finstuen*, 496 F.3d at 1144.

there was some snow in the Dock 5 area with constructive knowledge of black ice where the

accident occurred. This allegation rests on a series of speculative and hypothetical assumptions.

First, Forbes assumes that the presence of a light snowfall would reasonably lead Wal-

Mart to "affirmatively inspect the docks for slippery hazards."[62] Second, Forbes assumes that

the inspection of the dock area was necessary even though it is undisputed that the area of ramp

between the back of Forbes's truck and the end of the loading dock "was bare concrete that

looked wet, but it *was not icy* based on what Plaintiff could see and his walking around in that

area."[63] Third, Forbes assumes that this inspection would be necessary even though there is no

evidence that anyone besides Forbes had ever regularly walked at the bottom of the loading

dock. Fourth, Forbes assumes that a reasonable investigation would have been so careful as to

discover a patch of black ice that even Forbes, who was down in the loading dock, did not see

before the accident.[64] These assumptions are not well founded, and appear to require

extraordinary vigilance on the part of property owners. However, established Utah law only

requires property owners to exercise *ordinary care*.[65]

The Utah Supreme Court addressed a similar circumstance in *Martin v. Safeway Stores,

Inc.*,[66] where a woman broke her leg when she fell on a patch of black ice leading from the

parking lot to a grocery store. The Court ultimately agreed with the trial court that

> as a matter of law reasonable minds could not differ in finding that the defendant's
> employees had met their duty under the circumstance in making the sidewalk
> reasonably safe, and that no evidence was presented as to how long the ice was

---

[62] *Id.* at 8.

[63] *See supra* note 18 and accompanying text (emphasis added).

[64] *See supra* note 24 and accompanying text.

[65] *Martin v. Safeway Stores, Inc.*, 565 P.2d 1139, 1140 (Utah 1977) ("The essential inquiry . . . is whether the
defendant's employees know, or *in the exercise of ordinary care should have known*, that a dangerous condition
existed . . . .").

[66] *Id.*

present or that the employees of the store had or in the exercise of reasonable care could have had notice of the condition and an opportunity to correct it.[67]

The Utah Supreme Court noted that an employee had also passed the area where the accident occurred several times and "had observed it to be wet but had not observed the presence of any ice."[68] The Court explained that property owners do not have a duty to "mop the sidewalk dry or take other steps necessary to prevent the accumulation of moisture . . . that might freeze and create an icy condition."[69] After all, "property owners are not insurers of the safety of those who come upon their property, even though they are business invitees."[70] In other words, property owners are not omniscient to all conceivable hazards, but must only exercise ordinary care under the circumstances. In the absence of positive evidence to the contrary, the Utah Supreme Court found that the property owner in *Martin* acted reasonably as a matter of law.

What evidence must a plaintiff bring forward in order to show that the property owner *should have known* of the temporary hazard? The Court in *Martin* said that "[t]he liability of the [property owner] should be established only when the condition complained of has existed *for a long enough time* that the owner should have known about it and corrected it."[71] In other words, the reasonably prudent property owner *should* discover certain hazards if they exist for a long enough period.

In order to survive summary judgment, a plaintiff must give positive *factual* evidence that the hazard has existed long enough to give constructive notice, not mere speculation. In *Jex v.*

---

[67] *Id.* at 1141.

[68] *Id.* at 1140.

[69] *Id.* at 1141.

[70] *Id.* at 1140.

[71] *Id.* (emphasis added); *Jex*, 196 P.3d at 581 ("[P]laintiff must present evidence that 'would show . . . that it had been there for an *appreciable time*.'") (emphasis added) (second alteration in original).

*JRA, Inc.*[72] the Utah Supreme Court found insufficient evidence that a hazard had existed for a long enough time where a woman slipped on a puddle of water in a store. The Court explained that it has "not . . . imputed constructive notice in cases such as Jex's, where there is no evidence regarding the amount of time the unsafe condition has existed."[73] The Court explained that it is improper to impute constructive knowledge to the property owner if "conjecture and speculation is the only way to determine the length of time the puddle was on the floor."[74]

In the instant case, like the plaintiffs in *Jex* and *Martin*, Forbes has not presented any *evidence* of when the hazard occurred, and how long it existed before his accident. Instead, Forbes basically speculates when and how long the hazard existed and finally disclaims any knowledge. Forbes testified as follows:

> Q.  So is it the slope that caused the misstep or was there something slick there?
> A.  It must have been some black ice or something, because right there was no snow . . . .[75]
>
> Q.  Do you know when the ice formed there?
> A.  Well, it must have been while I was inside the building.
> . . . .
> Q.  Why do you say it must have formed while you were in the building?
> A.  Well, it didn't seem that slick to me, the concrete, it was wet, but it wasn't icy.
> . . . .
> Q.  Referring back to my question about formation of the ice, you don't know if that ice had formed within a few minutes of when you fell, do you?
> A.  I don't.
> Q.  Or if it had formed 20 minutes before you fell?
> A.  I don't.[76]

---

[72] [196 P.3d 576 (Utah 2008).](#)

[73] *Id.* at 581.

[74] *Id.* (internal quotation marks omitted).

[75] Forbes Dep. at 61.

[76] *Id.* at 65-66.

Forbes essentially states (1) the ground seemed wet, but did not seem icy when he arrived; (2) there was no snow where he slipped, so it may have been black ice; and (3) since he did not notice the ice when he arrived, it might have formed a few minutes before he fell. Forbes admits he has no idea how long it had existed prior to his fall.

Forbes is thus very similar to the injured woman in *Martin*, who "presented no evidence to show the temperature or when the freezing could have occurred."[77] This lack of factual evidence led the Court in *Martin* to "*the only reasonable inference that could be drawn*," which was that "the ice formed at a time and place where it was not observed by defendant's employees or any customers, or that the freezing occurred after the store employees could reasonably have expected customers to come to the store."[78] In other words, in the absence of positive factual evidence to the contrary, the Court inferred that the property owner acted reasonably and without any constructive knowledge of a temporary hazard. In Forbes's case, without positive factual evidence that the hazard existed for a sufficient time before the accident, the "the only reasonable inference" must be drawn—i.e., that Defendant acted reasonably and without constructive knowledge of the hazard.

It is true that Forbes also asserts: "A jury could conclude that such a broad swath of hardened ice does not fall at once out of the sky, but could only have gradually developed over time."[79] However, Forbes tries to have it both ways: (1) since he did not see it, the ice must have formed over a short period of time, but (2) to make Wal-Mart liable, the ice must have formed over a long period of time. Forbes's ambivalence about the formation of the hazard underscores his lack of factual evidence to support his speculation.

---

[77] *Martin*, Inc., 565 P.2d at 1140.

[78] *Id.* (emphasis added).

[79] Opposition Mem. at 9.

## 2. Sufficient Time *After* Notice to Remedy the Hazard

In order to survive Defendant's motion for summary judgment, Plaintiff Forbes must raise a genuine issue of fact material to the first of these two elements: (1) notice of hazard, and then to the second: (2) sufficient time after notice to remedy the hazard. Without notice of the hazard, it is illogical to consider the sufficiency of time *after* notice. The Utah Supreme Court was quite clear that the issue is whether "'*after* [obtaining] such knowledge, sufficient time elapsed that in the exercise of reasonable care he should have remedied it.'"[80] Since Forbes failed to show a genuine issue of material fact that Defendant had any notice of the hazard *before* the accident, there is no basis to examine how much time elapsed *after* the notice.

## CONCLUSION

There are no genuine issues of material fact, and Wal-Mart is entitled to judgment as a matter of law against Forbes's negligence claim. Forbes failed to show a genuine issue of material fact regarding Wal-Mart's actual or constructive awareness of a temporary hazard. Instead of presenting "specific facts" in support of his legal allegations, Forbes relied on "[u]nsupported conclusory allegations." Without a genuine issue of material fact on the essential element of notice, Forbes's claim fails as a matter of law.

---

[80] *Jex*, 196 P.3d at 580 (alteration in original) (emphasis added).

# ORDER

IT IS HEREBY ORDERED that Wal-Mart's motion for summary judgment against Forbes's negligence claim[81] is GRANTED.

Dated this 13th day of March 2010.

BY THE COURT:

David Nuffer
United States Magistrate Judge

---

[81] Defendant Wal-Mart Stores' Motion for Summary Judgment, docket no. 36, filed October 30, 2009.